154 N.J. Super. 174 (1977)
381 A.2d 58
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ELAINE WRIGHT, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted October 31, 1977.
Decided December 9, 1977.
*175 Before Judges FRITZ, BOTTER and ARD.
Mr. Stanley C. Van Ness, Public Defender, attorney for appellant (Mr. William L. Doyle, of counsel and on the brief).
Mr. Leonard D. Ronco, Special Deputy Attorney General In-Charge, Acting Essex County Prosecutor, attorney for respondent (Mr. Stephen R. Knox, Special Deputy Attorney General, Acting Assistant Prosecutor, of counsel and on the brief).
*176 The opinion of the court was delivered by ARD, J.A.D.
Following a jury trial defendant was found guilty of four counts of obtaining money under false pretenses, one count of attempting to obtain money under false pretenses and five counts of uttering forged instruments. Subsequently she was sentenced to a six-month term in the Essex County Correction Center on Count 1 (false pretenses) and a six-month concurrent term to the same institution on Count 2 (uttering a forged instrument). The trial judge suspended imposition of sentences on the remaining counts and recommended that defendant be permitted either "work release" or "family release" if so requested.
A review of the pertinent facts indicates that defendant entered a bank and attempted in one transaction to cash five checks.[1] Each check was a company check made out to a different payee. The drawer of each check purported to be Robert Farkas, the executive vice-president of the company. The signature was a forgery. On the back of each check was an endorsement in the name of the respective payee as well as in the name of Jacquelyn Wilson. Farkas testified that there was no one in his employ with the name Jacquelyn Wilson. He also testified that the checks were company checks missing from the voucher check box in his firm. Defendant, a former employee, was identified by two bank employees through a group photograph of an office party. They identified defendant as the person who had cashed the company checks. Defendant testified in her own behalf and confirmed that she had occasionally gone to the bank while employed by the company to make deposits for the company but denied being at the bank on the date in question and denied taking or attempting to cash any company checks. The bank teller testified that upon being presented with five checks to cash he *177 began cashing them and just prior to cashing the last check attempted to get proper identification from defendant. After an unsuccessful attempt to obtain proper identification through the services of another teller, he phoned the drawer company. While he was on the phone, the woman, identified as defendant, left the bank with the money from the four cashed checks, leaving the remaining uncashed check on the counter. This latter circumstance accounted for the one charge of attempting to obtain money under false pretenses.
In addition to the allegation that the six-month custodial sentence was manifestly excessive and an abuse of judicial discretion, defendant claims that the five counts of uttering a forged instrument cannot properly result in five separate convictions in the circumstances of this case. A similar claim is made regarding the five counts, including the count alleging an attempt, of obtaining money by false pretenses. Finally, defendant contends that not only is there a merger of all charges of obtaining money by false pretenses and a merger of all charges of uttering a forged instrument but also a merger of the merged charge of obtaining money by false pretenses and the merged charge of uttering a forged instrument into one conviction of uttering a forged instrument. In other words, the entire transaction constitued one crime.
We are satisfied that the uttering of the five checks to the bank teller at one time constitutes a single transaction which should not be fractionalized into separate crimes in accordance with the number of checks uttered.
Although dealing with drug-related offenses and separate statutory crimes, the recent trilogy of cases concerning a single multiple-count indictment of related violations assists us in making this analytical determination. State v. Jester, 68 N.J. 87 (1975); State v. Davis, 68 N.J. 69 (1975); State v. Ruiz, 68 N.J. 54 (1975).
In State v. Davis the court stated:
As a practical matter, however, it may be helpful to employ a certain flexibility of approach to the inquiry of whether separate offenses have been established under the proofs, attended by considerations *178 of "fairness and fulfillment of reasonable expectations in the light of constitutional and common law goals." State v. Currie, 41 N.J. 531, 539 (1964). Such an approach would entail analysis of the evidence in terms of, among other things, the time and place of each purported violation; whether the proof submitted as to one count of the indictment would be a necessary ingredient to a conviction under another count; whether one act was an integral part of a larger scheme or episode; the intent of the accused; and the consequences of the criminal standards transgressed. * * * [68 N.J. at 81]
The rationale of Davis is based on the fundamental point:
* * * If an accused has committed only one offense, he cannot be punished as if for two. Hence, we reaffirm the prohibition against multiple punishment for a single wrongdoing. * * * [at 77]
In applying the Davis standards to this case we are satisfied that the proofs do not establish separate offenses. So much of defendant's improper conduct as was charged in the indictment  uttering forged checks  constituted a single wrongdoing. She made one trip to the bank and proffered all of the checks to one teller in one operation. Her intent was to leave the bank with the entire proceeds of the operation. To fractionalize each integral part of the whole episode of uttering (one wrongdoing) is to do violence to common sense and fundamental fairness. The classical test of multiplicity, as set down in Bell v. United States, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955), is whether the legislative intent is to punish individual acts separately or to punish only the course of action which they constitute. We think the facts of this case dictate the latter approach and are consistent with the criteria of Davis.
An examination of the forgery and uttering statute buttresses defendant's position. N.J.S.A. 2A:109-1 provides:
Any person who, with intent to prejudice, injure, damage or defraud any other person:
a. Falsely makes, alters, forges or counterfeits any record or other authentic matter of a public nature or character, or any printed or written instrument or indorsement, acceptance, transfer or assignment thereof; or
*179 b. Utters or publishes as true, any such false, altered, forged or counterfeited matter, knowing the same to be false, altered, forged or counterfeited * * * is guilty of a high misdemeanor.
We conceive the difference in the language between subsection (a) (forgery) and subsection (b) (uttering) to be significant. Under (a) it appears that each and every forgery of "any printed or written instrument" is a separate violation of the subsection whereas no such clear implication is present in subsection (b). The latter section speaks not of individual instruments but of "any such forged matter," a more general term. Several jurisdictions have recognized this distinction and have held that the making and forging of different checks constitute separate offenses, while the passing and uttering of several forged checks, at the same time, constitutes one offense. People v. Ryan, 74 Cal. App. 125, 239 P. 419 (1925); Barton v. State, 23 Wis. 587 (1869) (defendant forged and passed five separate checks at the same time to same bank; held, five distinct forgeries but only one act of uttering of the five drafts); see also, 36 Am. Jur.2d, Forgery, § 43 at 705.
The question of merging the five uttering charges into one is similar to the problem resolved in Bell v. United States, supra. The issue in Bell was whether the defendant could be charged with two separate crimes when transporting two women on the same interstate trip and in the same vehicle for the purpose of prostitution in violation of the Mann Act. The Court recognized the ability of Congress to make the simultaneous transportation of more than one woman in violation of the Mann Act subject to cumulative punishment for each woman so transported. The question in Bell, like the question before us, is: Did Congress do so? In analyzing the statute the court determined that the words of the statute defining the crime and fixing the punishment did not indicate a legislative intent to provide for multiple offenses under the circumstances. The same thing may be said for N.J.S.A. 2A:109-1(b).
*180 The Bell court went on to say:
* * * Again, it will not promote guiding analysis to indulge in what might be called the color-matching of prior decisions concerned with "the unit of prosecution" in order to determine how near to, or how far from, the problem under this statute the answers are that have been given under other statutes. [349 U.S. at 83, 75 S.Ct. 622]
The court continued:
* * * About only one aspect of the problem can one be dogmatic. When Congress has the will it has no difficulty in expressing it  when it has the will, that is, of defining what it desires to make the unit of prosecution and, more particularly, to make each stick in a faggot a single criminal unit. When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity. * * * [at 83, 75 S.Ct. at 622]
And further:
* * * It merely means that if Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses, when we have no more to go on than the present case furnishes. [at 84, 75 S.Ct. at 622]
A reading of the statute under consideration requires the same conclusion. Absent specification, we see no basis to make a separate crime of uttering forged matter for each check involved. As the Bell court indicated, this would be making "each stick in a faggot a single criminal unit."
Additionally, there is the question whether defendant should be convicted of separate offenses of obtaining and attempting to obtain money under false pretenses alleged in counts 1, 3, 5, 7 and 9 of the indictment. Again, under the circumstances of this case, for the reasons enunciated, we are satisfied defendant's activities constitute a single offense. The criteria of State v. Davis, supra, when analyzed in the context of the facts of this case, dictates such a determination.
*181 Finally, there remains the question of whether the single offense of obtaining money under false pretenses should merge with the single offense of uttering.
The State did not concede a merger of the separate charges of uttering. We have already indicated our disagreement with the State's position and expressed our reasoning. However, the State did concede a merger of the obtaining by false pretenses charges with the charges of uttering. We are satisfied this concession is still appropriate notwithstanding this court's merger of the uttering charges.
We are also of the opinion, notwithstanding the different circumstances, that the holding of State v. Moran, 73 N.J. 79 (1977), is pertinent. In Moran a three-count indictment was handed up against defendant charging him with (1) assault and battery upon a police officer acting in the performance of his duties while in uniform (N.J.S.A. 2A:90-4), (2) atrocious assault and battery (N.J.S.A. 2A:90-1) and (3) larceny of a pistol from the officer (N.J.S.A. 2A:119-1). After pleading guilty to the three charges defendant received separate sentences on each charge. Subsequently the Appellate Division, on its own motion, concluded that the acts of defendant may have been in violation of both N.J.S.A. 2A:90-1 and 2A:90-4 but defendant could only be guilty of one criminal act and could only be sentenced for one of the offenses.
In affirming the Appellate court, the Supreme Court stated:
It seems clear that defendant's attack on the police officer constituted violations of both statutes. * * * The question is whether the Legislature intended that in circumstances such as are here presented, defendant's single criminal act, a violation of both statutes, would constitute two separate offenses for which he could receive separate punishments.
It is clear there was no such intent. * * *

* * * * * * * *
We therefore reaffirm the judgment of the Appellate Division that defendant's attack on the officer was a single criminal offense even though it constituted violations of two high misdemeanor statutes. Cf. State v. Whittle, 52 N.J. 407, 411 (1968). [at 81-82]
*182 In the instant case, we are satisfied that defendant's activities in the bank constitute a single criminal offense even though, like Moran, the activities constituted violations of two criminal statutes.
Since false pretenses (N.J.S.A. 2A:111-1) is a misdemeanor and uttering forged instruments (N.J.S.A. 2A:109-1) is a high misdemeanor, the lesser crime should give way to the greater. Moreover, uttering the forged checks constitutes the principal aspect of the false pretenses by which the money was obtained. Accordingly, we hold that only one conviction should remain  a conviction for uttering based on the allegations of count 2 of the indictment. The convictions on all other counts of the indictment and the sentences imposed thereon are vacated.
The trial judge treated the merged convictions as one offense for sentencing purposes. Defendant received a six-month custodial sentence in the Essex County Correction Center with a recommendation that work or family release be permitted. She appeals contending the sentence is manifestly excessive and unduly punitive. We disagree. The crime of which defendant stands convicted is serious. It is a high misdemeanor which carries a maximum penalty of not more than seven years in prison as well as an optional fine of up to $2,000. We are satisfied that the sentence imposed was not excessive or unduly punitive. State v. Knight, 72 N.J. 193, 195 (1976). The conviction and sentence for uttering forged checks is affirmed.
NOTES
[1] Although counts 2, 4, 6 and 8 of the indictment do not designate the statutory violation to be N.J.S.A. 2A:109-1(b), the allegations of each count allege uttering (b) rather than forgery (a). The case was presented on that theory.