701 A.2d 464

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. LLOYD T. EURE, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted September 16, 1997—Decided October 6, 1997.

Before Judges LONG, STERN and KIMMELMAN.

*Ivelisse Torres*, Public Defender, attorney for appellant (*Jacqueline E. Turner*, Assistant Deputy Public Defender, of counsel and on the letter brief).

*Peter Verniero*, Attorney General, attorney for respondent (*Christine M. D'Elia*, Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

STERN, J.A.D.

Defendant and Nathaniel Davis were indicted for conspiracy to commit burglary and robbery (count one), second degree burglary with a handgun (count two), armed robbery (count three), aggravated assault (count four), unlawful possession of a handgun (count five), and possession of the handgun for unlawful purpose (count six). Tried jointly in 1992, defendant and Davis were both convicted of third degree burglary on count two, theft of movable property as a lesser included offense on count three, and conspiracy (to commit burglary, trespass, theft of movable property and unlawful taking of a means of conveyance) on count one.

Defendant was sentenced to seven years in the custody of the Commissioner of Corrections for the theft offense and to a concurrent four year term for burglary. The conspiracy conviction was

merged into the other charges, and $100 VCCB penalty was imposed for each offense. Defendant's sentence was subsequently modified pursuant to *R.* 3:21–10(b) to permit enrollment in a drug treatment program, after which his probation was revoked and defendant was resentenced to the same custodial terms originally imposed.

On this appeal defendant argues:

POINT I THE TRIAL JUDGE'S CHARGE ON ACCOMPLICE LIABILITY DENIED DEFENDANT A FAIR TRIAL AS HE FAILED TO INSTRUCT THE JURY THAT THE PRINCIPAL AND ACCOMPLICE COULD BE GUILTY OF DIFFERENT CRIMES BASED ON THEIR OWN INDIVIDUAL MENTAL STATES. (Not Raised Below)

POINT II THE DEFENDANT'S CONVICTIONS FOR SECOND DEGREE THEFT AND CONSPIRACY MUST BE VACATED AS DEFENDANT WAS CONVICTED OF THE THEFT OF A MOTOR VEHICLE, A THIRD DEGREE OFFENSE. (Not Raised Below)

## I.

After Kenneth Bynum, the driver of a New Jersey Transit bus, reached his final destination and vacated the bus on December 15, 1991, defendant convinced the driver to return to the bus and to look for his gloves which were found under the seat. Defendant and Davis had been passengers on the bus and had originally exited one stop before the final destination. While Bynum was in the men's room shortly thereafter he heard the bus start to drive away. He ran outside and saw defendant sitting in the driver's seat. Bynum noticed "a screwdriver with a pair of grip pliers inserted into the control valve [which] make the doors open and close." Bynum also noticed that the bus stopped down the road to pick up Davis. Bynum gave chase.

A passerby, Martin McDonald, and Bynum tried to stop the bus. When the bus had difficulty making a turn, Bynum managed to pull the screwdriver from the control valve on the door so as to lock the wheels. Defendant and Davis exited through the rear

emergency window. A West Orange police officer chased defendant and apprehended him. He was carrying a canvas bag containing two screwdrivers, a chisel, pry bar and claw hammer, and a bus schedule.

There was testimony that Davis had been discharged as an employee of New Jersey Transit approximately a year and a quarter before the bus was stolen. There was also testimony that the bus cost "approximately $175,000."

## II.

■ We reject defendant's claim, raised as plain error, that the trial judge's charge on accomplice liability "failed to instruct the jury that the principal and accomplice could be guilty of different crimes based on their own individual mental states." Given defendant's role in the theft and the nature of the offense,[1] we are satisfied—particularly because the jury was charged on various lesser included offenses to robbery, including the theft of which defendant was convicted and the unlawful taking of a means of conveyance—that the instruction as a whole did not constitute "plain error." *See, e.g., State v. Norman,* 151 *N.J.* 5, 37–38, 697 *A.*2d 511 (1997); *State v. Marrero,* 148 *N.J.* 469, 496–97, 691 *A.*2d 293 (1997); *State v. Reyes,* 140 *N.J.* 344, 359–61, 658 *A.*2d 1218 (1995); *see also State v. Scherzer,* 301 *N.J.Super.* 363, 472–75, 694 *A.*2d 196 (App.Div.1997), *certif. denied,* 151 *N.J.* 466, 700 *A.*2d 878 (1997). *State v. Williams,* 298 *N.J.Super.* 430, 440–42, 689 *A.*2d 821 (App.Div.), *certif. denied,* 150 *N.J.* 27, 695 *A.*2d 669 (1997); *State v. Cook,* 300 *N.J.Super.* 476, 489–90, 693 *A.*2d 483 (App.Div.

---

[1] Bynum initially named Davis as the passenger who returned for the gloves and the one who drove off with the bus. He later identified defendant as that person. He also identified defendant as the one "hitting [him] on the hands trying to get [Bynum] off the bus." Bynum identified Davis as having a gun. The jury acquitted defendants on the gun possession charges and second degree burglary.

1996); *State v. Rue*, 296 *N.J.Super.* 108, 114–16, 686 *A.*2d 348 (App.Div.1996), *certif. denied*, 148 *N.J.* 463, 690 *A.*2d 611 (1997).

## III.

We reject the State's contention that by not objecting to a charge on second degree theft, the issue concerning gradation was waived. We are dealing with an issue of sentence legality. *Cf. State v. Vasquez*, 129 *N.J.* 189, 195, 609 *A.*2d 29 (1992) (sentence issue not waived by guilty plea).

■ In its special verdict, the jury specifically found that the value of the stolen bus exceeded $75,000, and the interesting issue presented by this case is whether defendant was convicted of a second or third degree crime. *N.J.S.A.* 2C:20–2 provides for the grading of theft offenses and, in turn, the range of sentence. *N.J.S.A.* 2C:20–2b(1) provides that "[t]heft constitutes a crime of the second degree if: (a) [t]he amount involved is $75,000.00 or more...." *N.J.S.A.* 2C:20–2b(2) provides that "[t]heft constitutes a crime of the third degree if: ... (b) [t]he property stolen is a firearm, motor vehicle, vessel, boat, horse or airplane...." Liter-·ally, this offense could be considered second degree in light of the value of the stolen property, or third degree in light of the nature of the property stolen.

The parties do not note that *N.J.S.A.* 2C:20–2b(2)(b) did not read at the time of this offense in 1991 and trial in 1992 as it does today. That provision was amended by *L.* 1993, *c.* 363 (effective Jan. 4, 1994) to substitute the words "motor vehicle, vessel" for "automobile." The parties agree that a bus is a "motor vehicle," citing *N.J.S.A.* 39:1–1, but do not consider whether a bus was an "automobile" at the time of this offense. We note that at that time *N.J.S.A.* 39:1–1 defined "automobile," as it does today, to include "all motor vehicles except motorcycles." Accordingly, the 1993 amendment does not affect the result in this case and there is no *ex post facto* problem. In fact, if a bus was not an "automobile" in 1991, the result in this case would be the same because of the theft of property valued at over $75,000 without any question

regarding the application of *N.J.S.A.* 2C:20–2b(2)(b).[2]

In *State v. Moran,* 73 *N.J.* 79, 372 *A.*2d 1092 (1977), defendant was indicted for assault and battery upon a police officer, atrocious assault and battery as a result of the beating, and larceny of a pistol from the officer, all in violation of the former Title 2A. Defendant pled guilty and was sentenced to concurrent terms on all three counts. *Id.* His subsequent motion to reduce sentence was denied and he appealed challenging the sentence as excessive. *Id.* at 80, 372 *A.*2d 1092. The Court concluded that "defendant's attack on the police officer constituted violations of" both *N.J.S.A.* 2A:90–4, assault and battery upon a police officer, and *N.J.S.A.* 2A:90–1, atrocious assault and battery. *Id.* at 81, 372 *A.*2d 1092. The Court also found that there was no legislative intent to permit separate punishment for the two separate offenses because "a single attack on an officer, even if atrocious, could result in only one conviction." *Id.* at 81, 372 *A.*2d 1092. Thus, the Court held that the offenses must merge, *id.,* and added:

> In a situation such as is here presented, if the State elects to proceed under both statutes and the jury convicts on each, judgment of conviction can be imposed only on one of the counts, the State making the choice as to the count on which judgment of conviction and sentence is to be imposed.
>
> [*Id.* at 82, 372 *A.*2d 1092.]

In the companion case of *State v. Richardson,* 73 *N.J.* 82, 372 *A.*2d 1093 (1977), defendants were convicted of assault and battery upon a police officer, atrocious assault and battery, and other crimes, as a result of a beating of a police officer while on patrol. Relying upon *Moran, supra,* the Court held "that where there is a single attack on a police officer, such attack, if atrocious, would be a violation of both *N.J.S.A.* 2A:90–1 (atrocious assault and battery) and *N.J.S.A.* 2A:90–4 (assault and battery upon a police officer acting in the performance of his duties while in uniform)." *Id.* at 86, 372 *A.*2d 1093. It concluded that the defendant could be convicted and sentenced for only one offense or the other and that "the State should make the choice as to the

---

[2] We note that no penalty was imposed under *N.J.S.A.* 2C:20–2.1.

conviction on which sentence is to be imposed." *Id.* at 86, n. 2, 372 *A.*2d 1093. In the absence of such a choice having been made in that case, the Court directed that the conviction for assault and battery merged into the conviction for atrocious assault and battery on a police officer. *Id.* at 86–87, 372 *A.*2d 1093. Other cases have made clear that where the same facts may violate two criminal statutes, the prosecutor may elect to prosecute under either or both, so long as a single conviction survives. *See, e.g., State v. Gledhill,* 67 *N.J.* 565, 580, 342 *A.*2d 161 (1975); *State In re M.C.,* 303 *N.J.Super.* 624, 628–29, 697 *A.*2d 571 (App.Div.1997); *but see State v. Milligan,* 202 *N.J.Super.* 336, 495 *A.*2d 132 (App.Div.1985), *aff'd o.b.,* 104 *N.J.* 67, 514 *A.*2d 1316 (1986) (specific crime of death by auto precluded prosecution for manslaughter). *See also N.J.S.A.* 2C:1–8a.

██ This case involves a grading provision of the theft statute under which defendant was convicted, and therefore the cases giving the prosecutor the right to elect the governing statutory provision under which to prosecute are not dispositive. Nevertheless, the rationale of the above cases makes clear that when two statutes govern the same offense, the Legislature generally intends the defendant to be tried and sentenced for the more serious offense or grade of offense. *See N.J.S.A.* 2C:1–8 (the less serious offense merges into the greater).

██ While criminal statutes are strictly construed, *State v. Valentin,* 105 *N.J.* 14, 17, 519 *A.*2d 322 (1987), we conclude that where stolen property has a value of more than $75,000, the Legislature intended defendant to be sentenced for a second degree crime even if the theft of that property would otherwise be a third degree crime.[3] The Legislature has now clearly provided that the theft of any motor vehicle, vessel, boat, horse or airplane is to constitute at least a third degree violation. While we

---

[3] Of course, the jury must determine the value of the property stolen. *See State v. D'Amato,* 218 *N.J.Super.* 595, 606–07, 528 *A.*2d 928 (App.Div.1987), *certif. denied,* 110 *N.J.* 170, 540 *A.*2d 169 (1988).

acknowledge that few airplanes or vessels may cost below $75,000, therefore questioning why the Legislature included them in *N.J.S.A.* 2C:20–2b(2)(b) unless it intended that the theft of all means of conveyance to constitute third degree crimes, the legislative history reveals that the Legislature merely intended to provide that—irrespective of value—the theft of motor vehicles and other means of conveyance had to constitute at least a third degree crime. The Commentary to the draft of the New Jersey Code of Criminal Justice makes that clear:

> We continue to gradate based on amount stolen and also continue the policy of upgrading certain types of thefts regardless of the amount stolen. In this regard, we reject as too lenient the grading system recommended by the [Model Penal Code] and look more in the direction of the Codes of other states, particularly New York.
>
> ... Second, we make thefts of more than $500 crimes of the third degree and upgrade certain other thefts to a crime of the third degree without regard to amount; thefts of firearms, vehicles, drugs, some receiving stolen property, thefts from the person, in violation of a fiduciary obligation or of public records....
>
> [*N.J. Penal Code, Vol. II Commentary* (Final Report of the N.J.Crim. Law Revision Comm'n 1971), comment to 2C:20–2 at 220–21.] [4]

We are thus satisfied that the Legislature intended that the theft of a motor vehicle constitutes at least a third degree crime, and constitutes a second degree crime when its value exceeds $75,000. The same was true with respect to the theft of a bus in 1991, whether or not a bus was then considered an "automobile."

The judgment and sentences imposed are affirmed.

---

[4] We need not consider subsequent developments with respect to New York law or other provisions of our Code of Criminal Justice. We, of course, quote the Commentary to the 1971 Criminal Law Revision Commission report only for the purpose of considering the issue with which we deal, and not other provisions relating to theft which, after adoption, were amended from time to time.